Michael J. DAUGHETY,
et al., Appellants,

v.

NATIONAL ASSOCIATION OF HOME-BUILDERS OF THE UNITED STATES, et al., Appellees.

No. 05–97–00964–CV.

Court of Appeals of Texas,
Dallas.

May 21, 1998.

Byron L. Woolley, Simpson, Woolley & McConachie, L.L.P., Dallas, Evan Lane (Van) Shaw, Shaw & Lemon, Dallas, for Appellants.

James Kennedy Taylor, Beck Redden Secrest, Houston, Charles F. Holmans, III, Law Offices of Charles F. Holmans, III, Dallas, Robb L. Voyles, Baker & Botts, LLP, Austin, Janice Vaughn Mock, Dallas, David C. Myers, Jackson & Walker, Dallas, John A. Gilliam, Jenkins & Gilchrist, Dallas, Howard L. Nations, Law Offices of Howard L. Nations, Houston, Randolph N. Wisener, Cantilo, Maisel & Hubbard, Dallas, George Walter Bramblett, Jr., Haynes & Boone, LLP, Dallas, J. Crawford Kerr, El Paso, Michael P. Falzone, Hirschler, Fleischler, Weinber, Cox & Allen, Richmond, VA, Arnold Augur Spencer, Dallas, for Appellees.

Before KINKEADE, MORRIS and BRIDGES, JJ.

## OPINION

BRIDGES, Justice.

In this appeal, we must decide whether the trial court abused its discretion in refusing to certify a nationwide class of at least 1.5 million current and former owners of Home Owners Warranty (HOW) insurance policies. Because appellants never requested the trial court to certify the specific class it now contends should have been certified, we conclude no abuse of discretion is shown. Accordingly, we affirm the trial court's order denying certification.

### FACTUAL BACKGROUND

In 1973, the National Association of Home Builders (NAHB) created the HOW Program primarily to help its member builders market their homes. HOW was an insurance-backed warranty program that participating builders provided to new homebuyers for a ten-year period to protect them from various construction defects. NAHB insured the builders' liability pursuant to these warranties. If a builder did not fulfill its warranty obligations, the homebuyer could look to HOW for repair or compensation for covered defects.

NAHB owned and operated the program until 1981 when it created and transferred operation of the HOW program to HOW Insurance Company (HOWIC) and its related entities. Under the new arrangement, HOWIC became insurer of the builders' liability pursuant to the warranties. Its members included builders in every state except Alaska. After operating for thirteen years, HOW was placed in receivership in October 1994 by the Virginia Bureau of Insurance, which asserted HOW was in hazardous financial condition. A deputy receiver was appointed to marshal HOW's assets and to pay the contractual claims HOW owed to creditors.

Ultimately, appellants brought this suit in Dallas County, alleging appellees perpetrated a fraud on the market and asserting class certification was proper.[1] In particular, ap-

---

1. Appellants are Michael J. Daughety, G. Joanne Daughety, Felton J. Davenport, and JoEllen Davenport, who are homeowners and certificate holders of insurance/warranty documents issued by the HOW Companies and who propose to represent the nationwide class in this action. Appellees are the National Association of Homebuilders of the United States, National Academy of Conciliators; Deloitte & Touche, LLP; Ernst & Young, LLP; Boykin & Casano, P.C.; Colton & Boykin, P.C.; Hamilton H. Boykin, individually and as partner of the Law Firms of Boykin & Casano, P.C. and Colton & Boykin, P.C.; Home Owners Warranty Corporation (Council) of Houston, Inc.; Home Owners Warranty Council of Metropolitan Dallas, Inc.; Home Owners War-

pellants complained that appellees (i) caused misrepresentations, false advertising, and false information to be published and disseminated about the HOW program and (ii) had engaged in a common course of conduct intended to defraud all purchasers of HOW policies. Their third amended petition set forth more than twenty causes of action against appellees, seeking damages for, among other things, personal injuries, including mental anguish and diminution in the value of their homes.

Appellants moved to certify a nationwide class of every person who ever owned a home enrolled in the HOW Program.[2] (The proposed class would include homeowners from forty-nine states.) Specifically, in their amended motion, appellants sought to certify as a class "all homeowners who at any time held certificates of warranty/insurance or had insurance/warranty coverage issued by the HOW Companies putatively insuring their homes. . . ." The motion proposed a number of subclasses and identified twenty-four "common issues of fact or law" relating to, among others, claims for DTPA and insurance code violations, common law actual and constructive fraud, negligence, and misrepresentation.

Two days before the hearing on the motion, appellants revised their class request via a rebuttal brief to appellees' brief and supplemental brief opposing class certification. In the rebuttal brief, "the Class refined itself, its causes of action, and its damages." In particular, appellants proposed a class limited to "those persons who owned a home covered by a HOW warranty/insurance cer-

tificate on October 14, 1994, the date of receivership." Further, appellants limited their request to the following "claims": violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act, negligence, negligent misrepresentation, fraud, unjust enrichment and constructive trust, and punitive damages. Appellants also dispensed with damages for mental anguish, emotional distress, personal injuries, diminution in property value, and other damages requiring individual determinations. Instead, appellants limited their damages to those "amenable to proof on a class wide [sic] basis from the books and records of HOW or one or more of the defendants and which are provable by accepted, expert formulation and calculation."

On May 29, 1997, the trial court conducted the hearing at which experts for both sides testified. At the conclusion of the hearing, the trial court denied appellants' first amended motion for class certification without making findings of fact and conclusions of law. Appellants subsequently filed a motion asking the trial court to reconsider its ruling to deny certification, and for the first time, sought certification of a Texas class for claims under the Texas Insurance Code.[3] The trial court apparently denied this request, and this appeal ensued. On appeal, appellants revised their request yet again, asking this Court to hold the trial court abused its discretion in refusing to certify a nationwide class based solely on Texas Insurance Code violations.[4]

ranty Council of the Golden Crescent Area; Home Owners Warranty Council of Greater El Paso, Inc.; Texas Capitol Area Builders Association; Home Owners Warranty Council of the Builders Association, Inc.; Home Owners Warranty Council of Greater South Texas, Inc.; H. Kenneth Seeber; James I. Barnett; Glenn M. Burns; Terence S. Cooke; John C. Kezer; Robert F. Spies; William F. Kenny; Joseph Chudnow; Dale C. Deharpport; John J. Koelemij; Aaron H. Kolkey; E. Ray Koth; Jack Lageschulte; Sanford B. Miot; Stanley Waranch; and Richard Oprenchak.

2. Certification was sought pursuant to rule 42 of the Texas Rules of Civil Procedure and article 21.21, sections seventeen through nineteen, of the Texas Insurance Code.

3. Neither the motion to reconsider nor the trial court's ruling on this motion are contained in the clerk's record. Nevertheless, we accept as true facts stated unless another party contradicts them. TEX.R.APP. P. 38.1(f). Further, appellants are not appealing any ruling on this motion to reconsider.

4. Additionally, we note that appellants sought leave to file a postsubmission brief, in which they assert the trial court abused its discretion in refusing "to certify a class consisting of 1.7 million homeowners nationwide or, alternatively, the 184,000 homeowners in Texas."

## CLASS CERTIFICATION

██ In their second point of error, appellants contend the trial court abused its discretion in denying their amended motion for class certification. Under this point, appellants contend we must reverse the trial court's ruling because the undisputed evidence supports certification of a nationwide class based solely on Texas Insurance Code violations. After reviewing the record in this cause, we conclude the trial court did not abuse its discretion.

Our task on appeal is not to determine in the first instance whether class certification is appropriate in a given case but to determine whether the trial court abused its discretion in denying certification. In that regard, we must first decide what relief was sought in the trial court and thus what issue is now before us on appeal.

As noted above, the trial court hearing, and ultimate order denying certification, was based on appellants' first amended motion for class certification. That motion identified a number of "common issues of law and fact" relating to a variety of theories of recovery. Additionally, the motion proposed a variety of subclasses.[5] Nowhere in the amended motion or any other document, or for that matter at the hearing itself, did appellants seek certification of a nationwide class based solely on Texas Insurance Code violations. To the contrary, the record reflects that appellants sought, at one time or another, certification of the following proposed classes: (1) all homeowners who at any time held certificates of warranty insurance or had insurance or warranty coverage issued by the HOW companies on various causes of action and damages personal to each claimant; (2) those persons who owned a home covered by a HOW warranty insurance certificate on October 14, 1994 on seven causes of action with damages limited to those amenable to proof on a classwide basis; (3) a "Texas class" for claims under the Texas Insurance Code; and (4) on appeal, a nationwide class on Texas Insurance Code violations. Thus, as the record establishes, appellants went to the hearing on one basis, a nationwide class of plaintiffs on seven causes of action, and are appealing the trial court's ruling on a different basis, a nationwide class based on one cause of action. In essence, appellants urge this Court to hold that the trial court abused its discretion in not certifying one specific class based on a single, discrete cause of action out of the numerous proposed classes and causes of action actually requested. This we refuse to do.

██ Under the rules of civil procedure and the insurance code, a trial court may certify a class action with respect to particular issues, if appropriate; however, nothing in the language of either rule requires a trial court to guess what relief will satisfy a class action proponent. TEX.R. CIV. P. 42(d); TEX. INS.CODE ANN. art. 21.21, § 18(h) (Vernon 1981). Our role as an appellate court is to determine the correctness of the lower court's judgment. *See Okere v. Apex Fin. Corp.*, 930 S.W.2d 146, 152 (Tex.App.—Dallas 1996, writ denied). That role is not altered

5. Specifically, the amended motion proposed the following subclasses:

(1) All such persons who have submitted claims under insurance/warranty documents issued by the HOW Companies;
(2) All such persons who participated in a dispute resolution process under the HOW warranty/insurance document in which the National Academy of Conciliators participated;
(3) All such persons who own a home with a loss alleged to be covered by insurance/warranty documents issued by the HOW Companies but who have yet to submit a claim;
(4) All such persons who own homes who may incur a loss covered by insurance/warranty documents issued by the HOW Companies;
(5) Members of the insurance-buying public who have submitted claims for losses to their homes under the HOW insurance/warranty documents issued by the HOW Companies;
(6) Members of the insurance-buying public who participated in a dispute resolution process involving losses to their homes under the HOW insurance/warranty documents in which NAC participated;
(7) Members of the insurance-buying public who own a home with a loss alleged to be covered by insurance/warranty documents issued by the HOW Companies but who have yet to submit a claim; and
(8) Members of the insurance-buying public who own homes and who may incur a loss covered by insurance/warranty documents issued by the HOW Companies.

by the fact that we are reviewing a decision on whether to certify a class action. Appellate rules reflect a policy that this Court decide a case in the same posture that was presented to the trial court. *Cf. Feldman v. Marks*, 960 S.W.2d 613, 616 (Tex.1996) (Gonzalez, J., dissenting) (explaining that appellate rules reflect policy that Supreme Court decide case in same posture as presented to court of appeals). In keeping with that policy, issues to be reviewed by an appellate court must have been actually presented to *and* considered by the trial court. *See de Monet v. PERA*, 877 S.W.2d 352, 361 (Tex. App.—Dallas 1994, no writ). It is axiomatic that justice is "best served by affording the trial court the first opportunity for review and decision." *See State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 382 (Tex. 1993) (Phillips, C.J., concurring). Addressing matters not specifically presented to the trial court usurps the trial court's authority to evaluate and rule on issues before it and denies the appellate court the benefit of the trial court's decision. *de Monet*, 877 S.W.2d at 361; *S.S.*, 858 S.W.2d at 381.

■ In this case, appellants' complaint simply does not comport with the request made of the trial court. We note that the record in this case contains more than 1700 pages plus voluminous exhibits. As is obvious from the record, appellants presented a complex case to the trial court and had several options from which to choose when asking it to certify a class. It was appellants' responsibility to identify the specific relief they sought in the trial court; it was not the trial court's burden to search the record in an attempt to frame relief in a manner that would minimally satisfy appellants. A trial court does not abuse its discretion by not granting a class action proponent less than what it has otherwise specifically requested. To hold otherwise puts the trial judge in the untenable, and inappropriate, position of deciding for class proponents exactly what they could, but did not, ask for. We will not place such a burden on trial courts. Under such circumstances, we cannot conclude the trial

court abused its discretion in refusing to do that which it was never asked to do. We overrule the second point of error.

Our disposition of the second point of error makes is unnecessary for us to address the first point of error. *See* TEX.R.APP. P. 47.1.[6]

We affirm the trial court's order denying class certification.

---

6. Appellants' first point of error complains that the trial court erred in excluding from consideration certain material presented in support of

certification and in imposing a "strict" standard of evidence at the hearing.